IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| CHRISTOPHER ANDRE FLOYD, | : |
| Plaintiff, | : |
| v. | : CASE NO. 4:13-CV-501-MSH |
| | : Social Security Appeal |
| CAROLYN COLVIN, | : |
| Commissioner of Social Security, | : |
| Defendant. | : |

## ORDER

The Social Security Commissioner, by adoption of the Administrative Law Judge's (ALJ's) determination, denied Plaintiff's application for disability benefits, finding that he was not disabled within the meaning of the Social Security Act and Regulations. Plaintiff contends that the Commissioner's decision was in error and seeks review under the relevant provisions of 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). All administrative remedies have been exhausted. Both parties filed their written consents for all proceedings to be conducted by the United States Magistrate Judge, including the entry of a final judgment directly appealable to the Eleventh Circuit Court of Appeals pursuant to 28 U.S.C. § 636(c)(3).

## LEGAL STANDARDS

The court's review of the Commissioner's decision is limited to a determination of whether it is supported by substantial evidence and whether the correct legal standards were applied. *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir. 1987) (per curiam).

"Substantial evidence is something more than a mere scintilla, but less than a preponderance. If the Commissioner's decision is supported by substantial evidence, this court must affirm, even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F. 3d 1206, 1210 (11th Cir. 2005) (internal quotation marks omitted). The court's role in reviewing claims brought under the Social Security Act is a narrow one. The court may neither decide facts, re-weigh evidence, nor substitute its judgment for that of the Commissioner.[1] *Moore v. Barnhart*, 405 F. 3d 1208, 1211 (11th Cir. 2005). It must, however, decide if the Commissioner applied the proper standards in reaching a decision. *Harrell v. Harris*, 610 F.2d 355, 359 (5th Cir. 1980) (per curiam). The court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). However, even if the evidence preponderates against the Commissioner's decision, it must be affirmed if substantial evidence supports it. *Id.*

The Plaintiff bears the initial burden of proving that he is unable to perform his previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). The Plaintiff's burden is a heavy one and is so stringent that it has been described as bordering on the unrealistic. *Oldham v. Schweiker*, 660 F.2d 1078, 1083 (5th Cir. 1981).[2] A Plaintiff seeking Social Security disability benefits must demonstrate that he suffers from an

---

[1] Credibility determinations are left to the Commissioner and not to the courts. *Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991). It is also up to the Commissioner and not to the courts to resolve conflicts in the evidence. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) (per curiam); *see also Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986).

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decision of the former Fifth Circuit rendered prior to October 1, 1981.

impairment that prevents him from engaging in any substantial gainful activity for a twelve-month period.  42 U.S.C. § 423(d)(1).  In addition to meeting the requirements of these statutes, in order to be eligible for disability payments, a Plaintiff must meet the requirements of the Commissioner's regulations promulgated pursuant to the authority given in the Social Security Act.  20 C.F.R. § 404.1 *et seq*.

Under the Regulations, the Commissioner uses a five-step procedure to determine if a Plaintiff is disabled.  *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. § 404.1520(a)(4).  First, the Commissioner determines whether the Plaintiff is working.  *Id.*  If not, the Commissioner determines whether the Plaintiff has an impairment which prevents the performance of basic work activities.  *Id.*  Second, the Commissioner determines the severity of the Plaintiff's impairment or combination of impairments.  *Id.*  Third, the Commissioner determines whether the Plaintiff's severe impairment(s) meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations (the "Listing").  *Id.*  Fourth, the Commissioner determines whether the Plaintiff's residual functional capacity ("RFC") can meet the physical and mental demands of past work.  *Id.*  Fifth and finally, the Commissioner determines whether the Plaintiff's residual functional capacity, age, education, and past work experience prevent the performance of any other work.  In arriving at a decision, the Commissioner must consider the combined effects of all of the alleged impairments, without regard to whether each, if considered separately, would be disabling.  *Id.*  The Commissioner's failure to apply correct legal standards to the evidence is grounds for reversal.  *Id.*

## ISSUES

I.     **Whether the ALJ properly analyzed Plaintiff's mental impairment under Listing 12.05.**

II.     **Whether the ALJ properly evaluated the opinion of Plaintiff's treating podiatrist, and whether the ALJ should have ordered a neuropsychological examination.**

III.     **Whether the ALJ properly assessed Plaintiff's RFC.**

### Administrative Proceedings

Plaintiff applied for disability insurance benefits on May 19, 2010, (Tr. 21, ECF No. 10-2) alleging disability as of May 10, 2010. (*Id*.) Plaintiff's application was denied initially and on reconsideration, and Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ conducted a hearing on May 3, 2012. (*Id*.) Following the hearing, the ALJ issued an unfavorable decision on June 15, 2012. (Tr. 21-33.) The Appeals Council ultimately denied Plaintiff's Request for Review on September 20, 2013. (Tr. 1-4.) This appeal followed.

### Statement of Facts and Evidence

After consideration of the written evidence and the hearing testimony in this case, the ALJ determined that Plaintiff meets the insured status requirement of the Social Security Act through September 30, 2015. (Tr. 23.) He further found that Plaintiff had not engaged in substantial gainful activity as defined by the Act since his alleged onset date. (*Id*.) The ALJ found that Plaintiff had the severe impairments of status post right Achilles tendon repair, hypertension, diabetes with possible diabetic neuropathy, possible sleep apnea, obesity, borderline intellectual functioning, and a probable

cognitive/phonological disorder. (*Id.*) The ALJ then determined that Plaintiff had no impairments that met or medically equaled any one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 23-25.) The ALJ specifically considered Listings 12.02 and 12.05 in making this determination. (Tr. 24.)

After consideration of the entire record, the ALJ found that Plaintiff retained the residual functional capacity (RFC) to perform light work with the following exceptions: he should be allowed to alternate sitting and standing at will and he should only occasionally climb, crouch, and crawl; he should have no more than occasional exposure to vibrations, should not operate foot controls with his right foot, should not drive or have any exposure to industrial hazards, should not perform work requiring ambulation on uneven terrain, and must work in a temperature-controlled environment; he can only perform simple tasks, which must be done in a structured environment (not a sheltered environment) where there will be help setting and reaching goals, and which require no more than borderline literacy skills; and he should have no more than occasional and casual contact with the general public. (Tr. 25.) The ALJ concluded that Plaintiff had past relevant work as a fast food cook, garment inspector, and industrial cleaner, but that he was incapable of performing that work. (Tr. 31.)

Plaintiff was thirty-five years of age as of his alleged disability onset date, which is considered to be a younger individual. (*Id.*) The ALJ found that Plaintiff had completed a high school education with a special education diploma and is capable of communicating in English. (*Id.*) Considering his education, age, work experience, and RFC, the ALJ elicited testimony from a vocational expert (VE) that there were jobs

5

which existed in significant numbers in the national economy which Plaintiff could perform. (Tr. 32.) The ALJ therefore found that Plaintiff had not been under a disability as defined in the Act from May 10, 2010 through the date of his decision. (Tr. 33.)

## DISCUSSION

I.  **Whether the ALJ properly analyzed Plaintiff's mental impairment under Listing 12.05.**

In support of his contention that the ALJ erred when he failed to find that Plaintiff's borderline intellectual functioning and other cognitive impairments met or medically equaled Listing 12.05, Plaintiff relies primarily on a report by Larmia Robbins-Brinson, Ph.D., dated September 30, 2010. (Pl.'s Br. 7-10, ECF No. 18.) The report is the result of a consultative psychological status examination which included a clinical interview, mental status evaluation, Wechsler Adult Intelligence Scale-IV, Wide Range Achievement Test-4, and Bender Visual-Motor Gestalt test. (Ex. 5F, Tr. 301-04.)

In the background interview, Plaintiff reported being married for ten years with two children and recent work history at Fort Valley State University as a custodian. (Tr. 301.) He discontinued work according to his account because of leg weakness and receives disability payments from an insurance company whose coverage was made available to him through employment. (Tr. 302.) He is a licensed driver. (*Id.*) Dr. Robbins-Brinson found him to have good insight and judgment and intelligence "moderately below average." (*Id.*) She also noted his speech as "slightly impaired." (Tr. 303.) After testing, she assigned Plaintiff a full scale intelligence quotient of 44 but expressly qualified her test results by stating that "[i]t is believed that the obtained test

scores and quotients present an under estimated portrayal of the claimant's true intellectual functions." (Tr. 304.)  She ascribed her conclusion in this regard to what she characterized as only a "moderate level of motivation and effort during the entire evaluation process." (*Id*.)

In the summary and prognosis based on her consultative examination, Dr. Robbins-Brinson found Plaintiff to have the ability to understand and carry out simple instructions and detailed instructions with some assistance. (*Id*.)  She found that his ability to work cooperatively with others including coworkers and supervisors as well as the general public to be within normal limits and that he can sustain focused attention and complete assigned tasks in a timely manner. (*Id*.)  She further ruled out decompensation under stress and determined that Plaintiff can manage his funds if disability benefits were awarded to him. (*Id*.)

In addressing the opinion of Dr. Robbins-Brinson, the ALJ thoroughly discussed all aspects of her testing and conclusions. (Tr. 28.)  Her overall diagnosis of Cognitive Disorder/Not Otherwise Specified and Borderline Intellectual Functioning with literacy deficits was clearly incorporated into the RFC.  Plaintiff's contention that he meets Listing 12.05 requires valid test results.  The testing here is not valid.  The consultative examiner said as much.  Dr. Robbins-Brinson put in her report that the testing is an underestimated portrayal of Plaintiff's true intellectual functions.  (Tr. 304.)

In addition to the invalid testing, Plaintiff's developmental history undermines his claim of disability due to borderline intellectual functioning.  His activities of daily living are ordinary, if somewhat constricted, and he maintained employment with an agency of

7

state government for over four years, leaving on his own volition due to what he described as weakness in his legs, not an inability to meet the mental demands of the work.  As the ALJ notes, the record evidence shows that Plaintiff affirmatively represents himself as capable of work by his application for and receipt of state unemployment insurance payments.  (Tr. 26.)  Dr. Larmia Robbins-Brinson found no disabling functional limitations and opined that Plaintiff can follow both simple instructions unassisted and complex instructions with some assistance.  (Tr. 304.)  Plaintiff does not meet nor do his symptoms medically equal Listing 12.05 and this contended error has no merit.

## II.     Whether the ALJ properly evaluated the opinion of Plaintiff's treating podiatrist, and whether the ALJ should have ordered a neuropsychological examination.

In his second argument, Plaintiff claims the ALJ did not properly evaluate opinion evidence of record and failed to more fully develop the record by contacting a treating podiatrist and ordering a neuropsychological examination.  (Pl.'s Br. 10-12.)  In his brief, Plaintiff declares "[t]he ALJ fails to assign weight to any of Dr. Jokhai's opinions or assessment of [Plaintiff] which constitute legal error that requires reversal." (Pl.'s Br. 12.)  A careful review of the written decision by the ALJ shows, however, that he expressly afforded significant weight to Dr. Jokhai as Plaintiff's treating podiatrist and affirmatively finds the opinion to be consistent with the longitudinal evidence.  (Tr. 28.)  Plaintiff fails to show that the ALJ disregarded the findings of the treating podiatrist or that there was a need for further contact. What "minor problems" Plaintiff experienced

according to the podiatrist were assessed and provided for in the RFC. (Tr. 28; Ex. 13F, Tr. 361-62.)

Likewise, given the thorough and extensive evidence of testing and records review by State agency psychological consultants regarding his nonexertional impairments, Plaintiff has not demonstrated how a neuropsychological examination would more fully develop the issue of his mental limitations. The ALJ found as severe impairments the contended borderline intellectual functioning and cognitive impairments of which Plaintiff complains. (Tr. 25.) The ALJ further included the restrictions supported by the record into his RFC assessment. (*Id*.) The ALJ noted that since Plaintiff first sought disability benefits under the Social Security Act and was denied at age 22, he has managed to maintain employment, start and support his family, and maintain relatively good health with the exception of obesity. (Tr. 30.) Because the record is sufficient for a decision, the ALJ did not err in not ordering additional examinations or further contacting medical sources whose opinions were well established in the record. *Outlaw v. Barnhart*, 197 F. App'x 883 (11th Cir. 2006). Plaintiff's second assignment of error lacks merit.

### III.   Whether the ALJ properly assessed Plaintiff's RFC.

Plaintiff's third and final contended error is that the ALJ did not properly assess Plaintiff's residual functional capacity. (Pl.'s Br. 13-14.) Specifically, he asserts that his credibility was discounted without cause and that the ALJ engaged in "sit and squirm" jurisprudence. (Pl.'s Br. 13.) The ALJ enumerated seven specific reasons he found Plaintiff to be less than fully credible in his assertion of disabling pain, each of which is permissible. (Tr. 30-31.) His last specification was the fact, undisputed by Plaintiff, that

while he alleged disability to work to the Social Security Administration, Plaintiff represented to the State of Georgia that he was both able to and actively seeking work after the asserted onset of disability date. (Tr. 31.)  Therefore, the ALJ found him to be "not credible." (*Id.*)

Plaintiff particularizes his argument in asserting that the ALJ relied on observations he made at the hearing to find Plaintiff not credible.  This has been characterized as "sit and squirm" analysis.  *Freeman v. Schweiker,* 681 F.2d 727, 731 (11th Cir. 1982).  While the ALJ pointed out in his written decision that he observed Plaintiff to have good concentration and no difficulty sitting despite his asserted inability to do so, neither of these were listed in the seven bases for discounting Plaintiff's credibility.  (Tr. 29, 30-31.)

An ALJ is not prohibited from considering a claimant's appearance and demeanor at the evidentiary hearing.  *Macia v. Bowen,* 829 F.2d 1009, 1011 (11th Cir. 1987). Demeanor can be considered along with other criteria.  *Norris v. Heckler,* 760 F.2d 1154, 1157-58 (11th Cir. 1985).  The prohibition against "sit and squirm" jurisprudence is meant to prohibit an ALJ from developing his own criteria for evaluating pain.  *Johns v. Bowen,* 821 F.2d 551, 557 (11th Cir. 1987).  Here, the ALJ actually listed in his decision seven reason why he discounted Plaintiff's credibility and his observations at the hearing is not one. (Tr. 30, 31.)  There is no merit to the third assertion of error by Plaintiff.

## CONCLUSION

WHEREFORE, for the foregoing reasons, it is ORDERED that the determination of the Social Security Commissioner is AFFIRMED.

SO ORDERED, this 19th day of December, 2014.

                                                     /s/ Stephen Hyles  
                                                     UNTED STATES MAGISTRATE JUDGE